**Sara PADOB, Plaintiff,**

v.

**ENTEX INFORMATION SERVICE, Defendant.**

**No. 96 Civ. 3719 (SAS).**

United States District Court, S.D. New York.

April 15, 1997.

Marttie Louis Thompson, New York City, for Plaintiff.

Jean L. Schmidt, Joel L. Finger, Roberts & Finger, L.L.P., New York City, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge:

Plaintiff Sara Padob alleges that her former employer, Defendant Entex Information Service ("Entex"), discharged her from her position of Corporate Sales Manager on account of her gender and in violation of Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law, Admin. Code of City of N.Y., § 8–101 et seq. Plaintiff also claims that she was terminated in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") prior to her termination from Entex. Defendant now moves for summary judgment pursuant to Fed. R.Civ.P. 56(c). For the reasons stated below, Defendant's motion is granted.

### I. BACKGROUND

Entex, a computer reseller and systems integrator, sells computer hardware and software and provides maintenance, support and network integration and other professional services to its customers throughout the United States. Affidavit of Dennis Kanegaye, former Manager of Entex's New York City branch ("Kanegaye Aff."), dated January 30, 1997, 1 2. Entex is headquartered in Rye Brook, New York and has over 60 branch offices, including a New York City branch. Deposition of Dennis Kanegaye ("Kanegaye Dep.") at 9. At the time of her termination, Plaintiff was employed at the New York City branch as a Corporate Sales Manager.

Plaintiff was employed at Entex more than nine years. She was first hired by Businessland, a predecessor of Entex, as an Account Manager in August 1986. Deposition of Sara Padob ("Padob Dep.") at 12–13. In August 1991, Businessland was purchased by the Information Services Division of JWP, Inc., and two years later, Entex was formed through the acquisition and privatization of JWP, Inc.'s Information Services Division. Kanegaye Aff. ¶¶ 2–3. Throughout these years of corporate change, Plaintiff received steady promotions, from Account Manager to Senior Marketing Consultant, to National Account Manager, to her final position as Corporate Sales Manager. See Padob Dep. at 30–47. She was promoted to Corporate Sales Manager in April 1994 by John McDowell, Branch Manager of Entex's Philadelphia office, who had been acting as branch manager in New York on an interim basis since August 1993. See id. at 44; Kanegaye Aff. ¶ 5.

As a Corporate Sales Manager, Plaintiff was responsible for directing, managing, and leading a team of Account Managers. Padob Dep. at 53, 274–76. Her duties included meeting assigned revenue, gross profit and operating contribution goals; attracting and hiring a productive sales team; keeping abreast of current and future trends in the computer industry; guiding the sales strategy and positioning within new and existing accounts; and assisting with Entex's transition from a highly transactional hardware and product business to a firm specializing in the technology services business. See Defendant's Local 3(g) Statement ("Def's 3(g)") at ¶ 25; Plaintiff's Response to Defendant's 3(g) Statement ("Pl's 3(g)") at ¶ 25.

At the time of her termination, Plaintiff was one of three Corporate Sales Managers, and the only female of the three. Kanegaye Aff. ¶ 9. One of the other two, Seth Frank, had been hired as a Corporate Sales Manager by John McDowell in August 1993. Id. at ¶ 10. The other, Rob Mariani, had been promoted to the position at the same time as Plaintiff. Id. at ¶ 13. Although Plaintiff was

the only female Corporate Sales Manager, she was one of six females in a departmental management position; both the Operations Manager and the Advanced Client Services Manager positions were held by women. *Id.* at ¶ 9. All departmental managers reported directly to the Branch Manager.

In January 1995, Dennis Kanegaye was hired as Branch Manager of the New York City branch and John McDowell returned to the Philadelphia office. Padob Dep. at 142. It is at this point that Plaintiff alleges she became subjected to discrimination. Specifically, she claims that Mr. Kanegaye treated her differently than the two male managers because she is a woman.

As soon as he became Branch Manager, Mr. Kanegaye was displeased with Plaintiff's performance. Shortly after taking over the New York City branch, he met with each Corporate Sales Manager and his or her sales team. Kanegaye Dep. at 36–38. Mr. Kanegaye testified that Plaintiff lacked knowledge of and involvement with her team's largest and most important accounts. *Id.* at 36–38. He met with Plaintiff in late January to discuss his concerns, and to suggest ways in which she might step up her involvement in her team's accounts. Def's 3(g) ¶ 38; Pl's 3(g) 38. He discussed performance issues with Plaintiff on a regular basis for the next seven months. *See* Padob Dep. at 304, 483–92.

In April 1995, Mr. Kanegaye prepared written performance appraisals for the three Corporate Sales Managers. Def's 3(g) ¶ 41; Pl's 3(g) ¶ 41. In measuring the performance of each, Mr. Kanegaye took eight objectives and nine performance characteristics into account. *See* Padob Dep. 628–630; Kanegaye Aff., Exs. A (Padob Appraisal) B (Mariani Appraisal), and C (Frank Appraisal). Plaintiff received an overall rating of "Partially Achieves", while Mr. Frank and Mr. Mariani received ratings of "Meets Expectations +".

Mr. Kanegaye found Plaintiff's performance deficient in several areas. He noted that she was not sufficiently involved with her team's accounts, did not adequately understand Entex's service capabilities and direction, was not viewed by her team as an effective manager, and had not effectively attracted or retained staff. *See* Kanegaye Aff., Ex. A. Mr. Kanegaye did not view Plaintiff's performance as entirely problematic, however. She had met or nearly met expectations in the areas of fostering teamwork within her sales team, creating and implementing management procedures, effectively administering her existing accounts, submitting administrative reports, and possessing good written and verbal communications skills. *Id.* Most significantly, Plaintiff had attained her quarterly sales quota each quarter, which her fellow Corporate Sales Managers had not, and her team was number one in sales. *Id.*

Although she submitted a written response to her appraisal shortly after her review, in which she disagreed with some of Mr. Kanegaye's comments, *see* Padob Aff., Ex. 6, Plaintiff testified that she did not disagree then or now with his assessment of her performance. Padob Dep. at 580–81, 583, 594. She also testified that it was not improper for Mr. Kanegaye to take factors other than sales quota achievement into account in assessing Corporate Sales Managers' performance, and that Mr. Kanegaye did not do so in an effort to discriminate against her because of her gender. *Id.* at 629–30.

The performance appraisal set out numerous objectives for Plaintiff. These included going on a minimum of six sales calls per week with her team members, holding weekly planning sessions with her sales team, expanding her knowledge of hardware technology and trends to better work with computer vendors, expanding her knowledge of Entex's services and capabilities, and interviewing a minimum of two new Account Manager candidates per week. Kanegaye Aff., Ex. A. While Plaintiff stated that she did not disagree with these objectives, *see* Padob Dep. at 595, she admitted that she failed to improve her performance to meet these objectives in the next three months. *Id.* at 304, 488.

Plaintiff alleges that during this period, Mr. Kanegaye met with her frequently on his own initiative to discuss her performance deficiencies, but was either unavailable or

unresponsive when she sought his help or advice with business matters. *Id.* at 153–55. Plaintiff contends that Mr. Kanegaye simply walked away from her without responding to her questions on several occasions. *Id.* at 155–61. She also alleges that although Mr. Kanegaye met with her at least weekly to discuss her performance, he often met with Mr. Frank and Mr. Mariani without including Plaintiff. *Id.* at 147. These facts were corroborated by the testimony of one of the Account Managers Plaintiff supervised, Nicole Kearney, who stated that Mr. Kanegaye, Mr. Frank, and Mr. Mariani frequently met behind the closed and locked doors of Mr. Kanegaye's office, as often as every other day. Deposition of Nicole Kearney, former Account Manager at Entex ("Kearney Dep.") at 75–76. Ms. Padob also testified that she believed that the male managers during this period were given more sales leads by Mr. Kanegaye than she was, although she admitted that she had no actual knowledge of what leads or how many leads the other Corporate Sales Managers received from Mr. Kanegaye. Padob Dep. at 197, 384–85. She also asserts that Mr. Kanegaye went to lunch with Mr. Frank and Mr. Mariani without inviting her on several occasions, Padob Dep. at 312–13, 316, although Mr. Kanegaye testified that he was invited by Mr. Frank and Mr. Mariani on very few occasions, and did not seek them out. Kanegaye Dep. at 77–79. Ms. Padob testified that she was excluded and treated differently in these ways because she is a female.

In July 1995, in light of the fact that Plaintiff had not sufficiently improved in the areas outlined in her performance appraisal, Mr. Kanegaye placed Plaintiff on a 60–day performance improvement plan ("PIP"). Padob Dep. at 613; Kanegaye Aff. ¶ 26, Ex. D. Mr. Kanegaye delineated with great specificity the activities and goals that Plaintiff had to undertake and achieve while on the PIP, within specified time frames. Kanegaye Aff., Ex. D. Plaintiff testified that she did not disagree then or now with several areas that Mr. Kanegaye found needed improvement, including that Plaintiff still needed to take a more proactive role in sales calls, more effectively lead and develop her sales team, retain and grow existing customer business, and identify and obtain new name business. Padob Dep. at 615–16.

Plaintiff testified that some of the goals of the PIP were not attainable due to her low staffing of three Account Managers and the time frame within which those goals were to be achieved. Specifically, Plaintiff felt she could not make a minimum of six face-to-face sales calls per week, close a minimum of two new accounts with greater than $3 to $5 million annual potential within 60 days, create a "pipeline" of "90 percent close potential" new business within 90 days, develop new sales opportunities with existing customers, and partially meet her hardware and services quotas. *Id.* at 63–50. She also felt she could not complete reading the book about sales assigned in the PIP within thirty days because her mother was ill and she had to take care of her once or twice during the week. *Id.* at 637. Finally, Plaintiff testified that she could not hire three qualified Account Managers within 45 days because there were not enough qualified candidates. *Id.* at 640. However, Plaintiff also testified that she never articulated any of these concerns to Mr. Kanegaye or to anyone else at Entex at the time. *Id.* at 630–31. She did not explain why she did not, other than to state repeatedly that she "did not have a dialogue with [Mr. Kanegaye]" and that she "followed the rules". *Id.* at 630–634.

Plaintiff also admitted that many of the goals in the PIP were both appropriate and achievable, namely: documenting all sales calls; holding weekly planning sessions with account managers; taking a leadership role with her team; identifying three new sales candidates in thirty days; turning around recruiting agencies' hesitancy to work with her as a hiring manager; turning around qualified sales manager candidates' desire to work for Entex but for a different sales manager than Plaintiff; developing within fourteen days a 60–day orientation plan for new hires; creating a first draft of specific plans and additional resources needed to make Plaintiff and her team more successful within two weeks; resubmitting her July 1995 monthly report using electronic forms put in place since April 1995; submitting an 80% accurate sales forecast in thirty days,

and a 90% accurate forecast in sixty days. Def's 3(g) at ¶ 73; Pl's 3(g) at ¶ 73.

Despite her admission that these goals were attainable, Plaintiff also admits that she failed to achieve the vast majority of these goals, and that she took personal days each week for a total of 10 1/2 days off in July and August. *See* Pl's 3(g) ¶¶ at 76–87. Plaintiff testified that while on the PIP, she started to read an assigned book on sales, began to have formal meetings with her sales team, tried to "grow" her business, and accelerated her recruiting. Padob Dep. at 485–86.

Around the time that Plaintiff was placed on the PIP, selection began for a yearly event called the "President's Club", with which Entex rewards employees for good performance. Kanegaye Dep. 68–69. Those selected to attend receive a trip to a vacation spot paid for by Entex; in September 1995, the President's Club went to Cancun, Mexico. Padob Dep. at 393–94. As direct supervisor of the departmental managers, Mr. Kanegaye selected who among them would go to the President's Club. He testified that this decision was based on several criteria, including attainment of sales quota, general performance, meeting objectives set by managers and "adherence to the Entex cultural code." Kanegaye Dep. at 70–72.

Ms. Padob had been selected for the President's Club the previous eight years, but was not selected in 1995. *Id.* at 73. Mr. Kanegaye testified that Plaintiff was not selected on the basis of her failure to adhere to the firm culture, i.e. she was not a strong leader of her team, lacked motivation and a good attitude, and was not a team player. *Id.* at 71–73. Mr. Kanegaye selected both Seth Frank and Rob Mariani for the President's Club, *id.* at 73, despite the fact that Mr. Mariani had not met his sales quota for several quarters and Mr. Frank had fallen behind quota in one quarter. *See* Kanegaye Aff., Exs. B & C. Plaintiff, as well as Account Manager Nicole Kearney, testified that in prior years selection for the President's Club was based on sales quota, and that Mr. Kanegaye had changed the criteria when he began to manage the New York City office. *See* Kearney Dep. at 68–70. Moreover, although Rob Mariani did not achieve his sales goals

for the period of April 1994 to April 1995, he was not placed on a PIP. *See* Padob Dep. at 147. Plaintiff attributes this differential treatment—both the failure to place Mr. Mariani on a PIP and the fact that both male Corporate Sales Managers were allowed to attend the President's Club when she was not—to her gender.

Finally, in October 1995, because of Plaintiff's allegedly poor performance, her employment with Entex was terminated. Plaintiff had filed a charge of discrimination with the EEOC shortly after she had been placed on the PIP in July 1995. Entex learned of the charge in August 1995. After her termination, she amended her charge to include retaliation for filing her claim with the EEOC.

## II. DISCUSSION

### A. Legal Standard for Summary Judgment

A motion for summary judgment may not be granted unless the court determines that no genuine issue of material fact need be tried and the moving party is entitled to judgment as a matter of law. See Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden of demonstrating that no factual dispute exists rests on the party seeking summary judgment. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996). In assessing the record to determine whether any genuine issue of material fact remains to be tried, the court must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is not to try issues of fact, but to determine whether issues exist to be tried. *See Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987).

### 1. *Discriminatory Discharge*

 Proper analysis of Plaintiff's Title VII discriminatory discharge claim requires

the court to apply the three-step burden shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Within this scheme, the plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 252–53. To establish a prima facie case of discriminatory discharge on the basis of gender, a plaintiff must show that he or she: 1) belongs to a protected class; 2) was performing his or her duties satisfactorily; 3) was discharged; and 4) that the discharge occurred in circumstances giving rise to an inference of discrimination based on gender. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). For purposes of summary judgment, the plaintiff's burden at the prima facie case stage is de minimis. *See Burdine*, 450 U.S. at 253; *McLee*, 109 F.3d at 134.

 If the aggrieved employee successfully demonstrates a prima facie case, a presumption of unlawful discrimination arises, and the burden of production shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the employee's discharge. *See Burdine*, 450 U.S. at 254; *McDonnell Douglas*, 411 U.S. at 802; *see also Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir.1996), *petition for cert. filed*, 65 USLW 3572 (Feb. 10, 1997). If the defendant satisfies this burden, the plaintiff has the ultimate burden of proving by a preponderance of the evidence that the employer's reason was merely a pretext for discrimination. *Hicks*, 509 U.S. at 515; *Holt*, 95 F.3d at 129. In order to survive a motion for summary judgment, the plaintiff must show there is a genuine issue of material fact as to whether: 1) the legitimate, non-discriminatory reason proffered by the employer was false or unworthy of belief; and 2) the plaintiff's sex was more likely than not the real reason for the discharge. *Hicks*, 509 U.S. at 515; *Holt*, 95 F.3d at 129.

I need not linger long on the first two stages of this analysis. Assuming *arguendo* that Plaintiff can make a prima facie case, Plaintiff has conceded in her deposition testimony that Entex has put forward a legitimate, non-discriminatory reason for firing her: her performance was viewed as inadequate by her supervisor. *See* Padob Dep. at 304, 488, 580–81, 583, 594; *see also* Pl's 3(g) at ¶¶ 50, 89. At several points in her deposition, and in her 3(g) statement, Plaintiff admits that much of Mr. Kanegaye's criticism of her performance was accurate, many of the goals he set for her to improve that performance were achievable, and that she did not achieve those goals in many instances. As such it seems most appropriate to turn directly to the third stage of the *McDonnell Douglas* inquiry: whether Plaintiff can prove that this reason was false, and that instead, her gender was more likely than not the reason for her discharge.

 Plaintiff simply cannot meet this burden. Other than her conclusory statements that she was treated differently because of her gender, Plaintiff has not come forward with facts that suggest that her gender and not her performance was the true cause for her discharge. Although the record is clear that Plaintiff was treated differently than the other Corporate Sales Managers, Plaintiff has not linked that differential treatment to her *gender* in any way other than to point to the fact that she was the only female Corporate Sales Manager. Drawing all permissible and reasonable inferences in Plaintiff's favor, the evidence and Plaintiff's own admissions suggest that it was as likely, if not more likely, that Plaintiff's performance, or even a simple personality conflict with her supervisor, motivated Plaintiff's termination. As such, Plaintiff cannot defeat summary judgment.

Plaintiff disagrees, and claims that she has raised genuine issues of material fact with respect to pretext. First, Plaintiff claims that she was treated differently on the basis of her gender because she was put on a PIP when she achieved her sales quota, while the male Corporate Sales Managers were not,

although their sales were lower and they did not achieve their respective sales quotas each quarter.[1] However, Plaintiff admitted that achievement of sales quota was only one of several factors that Mr. Kanegaye could appropriately consider when evaluating the Corporate Sales Managers' performance, and that she did not perform in other aspects of her position in accordance with the requirements for the job. Plaintiff also admitted that Mr. Kanegaye's consideration of these other factors did not result from gender discrimination. Plaintiff has therefore failed to show that Mr. Kanegaye placed her on a PIP on the basis of her gender rather than her performance.

Plaintiff also asserts that Mr. Kanegaye's failure to send her to the President's Club, while he sent Mr. Mariani and Mr. Frank, was the result of gender discrimination. Here again, Plaintiff has admitted that Mr. Kanegaye viewed her performance as inadequate, and felt that she did not meet his criteria for the President's Club. Plaintiff points out that Mr. Mariani did not meet his sales quota for that year. However, his overall evaluation was more satisfactory than Plaintiff's in most areas. Other than the fact that Mr. Mariani happens to be a man and Plaintiff is a woman, Plaintiff has in no way linked this "differential treatment" to her and Mr. Mariani's respective genders rather than their respective performances as Corporate Sales Managers.

█ Plaintiff also claims that the male Corporate Sales Managers received more sales leads than she. This assertion is pure speculation, as Plaintiff admitted at her deposition that she received sales leads from Mr. Kanegaye, and that she has no personal knowledge of how many or which leads Mr. Kanegaye gave to the two male managers. Finally, Plaintiff points to the fact that Mr. Kanegaye held meetings with Mr. Frank and Mr. Mariani without her, and that the three men occasionally had lunch, both inside and outside the office, and did not invite her. Plaintiff testified that she never asked to be included, nor did she complain to Mr. Kanegaye about this differential treatment. In her deposition, Plaintiff stated in a conclusory fashion that she was thus excluded because she is a woman. When pressed, Plaintiff continually stated that she felt this was due to the fact that she was the only woman. However, the fact of her being the only woman Corporate Sales Manager in her position, standing alone, does not create a genuine issue of material fact as to pretext based on gender. It might be just as likely that Plaintiff was excluded because of her acknowledged personality conflict with Mr. Kanegaye—but such behavior is not prohibited by Title VII.

Adding up the permissible inferences to be drawn from these facts, Plaintiff has not raised a genuine issue of fact as to whether Entex's explanation for firing her was pretextual. Other than the bare circumstance that the other two Corporate Sales Managers happened to be men, Plaintiff has not offered any evidence of how gender played a role in her termination, or that Entex's reason for terminating her employment was false. In fact, Plaintiff spent much of her deposition agreeing with Mr. Kanegaye's impressions of her inadequate performance. Plaintiff cannot merely rely for support, as she has here, on the fact that she is a woman and her fellow Corporate Sales Managers were men. More is necessary to satisfy Plaintiff's burden of showing pretext. As such, Plaintiff has failed to sustain her burden of raising a genuine issue of material fact as to this issue under the *McDonnell Douglas* framework, and summary judgment is granted on this claim.

1. The Court of Appeals has recently clarified that, absent a showing by the plaintiff that the employer's demands were made in bad faith, it is the employer's actual expectations and criteria for the position, and not the standards that might seem reasonable to the jury or the judge, that define whether an employee's job performance was unsatisfactory. *See Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir.1997). *See* also *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921–22 (2d Cir.1981) (employee may be discharged "on the basis of subjective business judgments, for any reason that is not discriminatory"). Plaintiff has made no allegation that Entex's or Mr. Kanegaye's criteria for the Corporate Sales Manager position resulted from bad faith, and in fact, conceded the opposite.

## 2. *Retaliatory Discharge*

■ Plaintiff's claim of retaliatory discharge is even weaker than her claim of discriminatory discharge. A claim of retaliatory discharge is also analyzed under the *McDonnell Douglas* three-part burden shifting framework. To establish a prima facie case, the plaintiff must show: 1) participation in a protected activity known to the defendant; 2) an adverse employment action; and 3) a causal connection between the two. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995). As with discriminatory discharge claims, if the Plaintiff makes a prima facie case, the burden then shifts to the employer to articulate a legitimate reason for the dismissal, and the Plaintiff must then come forward with evidence that creates a genuine issue of material fact as to pretext. *See Holt*, 95 F.3d at 130; *Tomka*, 66 F.3d at 1308.

■ Defendant concedes that Plaintiff meets the first two elements of her prima facie case: she is a member of a protected class and she engaged in the protected activity of filing a charge of discrimination with the EEOC. However, Plaintiff has failed to establish a causal connection between her termination and that protected activity. As noted above, Plaintiff filed a charge of discrimination with the EEOC on July 19, 1995. She was terminated on October 11, 1995. Plaintiff argues that this temporal proximity gives rise to an inference that her discharge was caused by her filing of the EEOC charge. However, "temporal proximity alone is not necessarily dispositive of a causal connection evidencing a retaliatory motive." *Philippeaux v. Fashion Institute of Technology*, 1996 WL 164462 at *9 (S.D.N.Y. Apr.9, 1996), *aff'd*, 104 F.3d 356 (2d Cir.1996). In fact, the timing of events suggests otherwise. At the time when Plaintiff filed her EEOC charge, she had already been informed by Mr. Kanegaye that she had been placed on the PIP and that a decision as to her continued employment would be made after two to three months. Thus her termination after three months, although close in proximity to her filing of an EEOC charge, does not, standing alone, establish the necessary causal connection between the protected activity and her discharge.

■ Significantly, other than temporal proximity, Plaintiff herself offers no other evidence of such a causal connection; at her deposition, she stated that "the only fact" upon which she based her retaliatory discharge claim "is that indeed I was employed by the company for nine years." Padob Dep. at 716–719. The length of Plaintiff's employment provides no evidence that her discharge was in retaliation for filing a charge of discrimination.

Plaintiff has failed to offer any facts to substantiate that she was discharged in retaliation for filing a charge of discrimination. As a consequence, Defendant is entitled to summary judgment on the claim of retaliatory discharge.

## III. CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact with regard to her allegation that Entex's proffered reason for firing her was pretextual. Plaintiff has also failed to raise a genuine issue of material fact as to any causal connection between her termination and her filing of a charge of discrimination with the EEOC. Therefore, Defendant's motion for summary judgment on Plaintiff's discriminatory discharge and retaliatory discharge claims under Title VII is granted, and Defendant is entitled to judgment as a matter of law on those claims. Having granted summary judgment in favor of Defendant on Plaintiff's federal claims, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims under New York State Human Rights Law and New York City Human Rights law. *See* 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims are dismissed without prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED.