■ In the Matter of IDELLA ABRAM, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. [896 NYS2d 764]—

Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Erie County [Diane Y. Devlin, J.], entered September 23, 2009) to annul a determination of respondent New York State Division of Human Rights. The determination dismissed the complaint of petitioner after a hearing.

It is hereby ordered that the determination is unanimously confirmed without costs and the petition is dismissed.

Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking to annul the determination of respondent New York State Division of Human Rights (Division) that she failed to establish that respondents City of Buffalo and the Buffalo Police Department (BPD) discriminated against her based on a disability or retaliated against her based on the fact that she filed a complaint with the Equal Employment Opportunity Commission (EEOC). Contrary to petitioner's contentions, we conclude that the determination is supported by substantial ev-

idence (*see generally Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106 [1987]; *Matter of Mohawk Val. Orthopedics, LLP v Carcone*, 66 AD3d 1350, 1351 [2009]).

Petitioner was a 19-year veteran of the BPD and, commencing in either 2000 or 2001, she was supervised by then-Lieutenant Guy Zagara. The record is replete with evidence that there was long-standing animus between the two. In May 2003 petitioner filed a complaint with the EEOC against, inter alia, Zagara, and he learned of the complaint that summer. In September 2003, petitioner was injured when she opened the door of a patrol vehicle and the door struck her knee. She applied for "injured on duty" (IOD) status, but her applications were denied on the ground that her injury "d[id] not fall within the meaning of [General Municipal Law § ]207-c." Petitioner remained out of work until November 3, 2003. Shortly before her return to work, petitioner provided a nurse case manager for Human Resources and Zagara with a doctor's note releasing her to work with restrictions. The nurse informed petitioner that she did not know whether there were "any light duty assignments available" and that petitioner should report for her "regular tour of duty" if she was not otherwise notified by the nurse before she was scheduled to return to work. Petitioner received no notification from the nurse and thus returned to work for her regular tour of duty.

On November 18, 2003, petitioner was allegedly reinjured while subduing an unruly man. She was treated at a hospital and was told to remain out of work until November 20, 2003. Petitioner again applied for IOD status, but that application was denied on the ground that her claim was "not verifiable and without merit." The decision to deny IOD status for the November 2003 incident was based in large part on a report filed by Zagara, in which he asserted that he was at the scene of the incident and did not personally observe petitioner engage in any action that could have resulted in an injury. There were no use of force reports and no crime reports filed after the November incident, and the unruly man in question was not arrested. Zagara concluded in his report that he "must assume" that no legitimate police function was being performed. Further, Zagara wrote that, because this was petitioner's second questionable request for IOD status, he could only conclude that petitioner was "seeking injured status using false pretenses."

Petitioner did not return to work and ultimately received performance of duty retirement, with significantly reduced benefits. Following grievances filed by petitioner, the denials of her applications for IOD status were overturned.

Petitioner thereafter filed a complaint with the Division, and it was determined that there was probable cause to support the complaint. The Administrative Law Judge (ALJ) issued a proposed decision and order following a public hearing, and the Division adopted the ALJ's decision and order. The ALJ concluded that petitioner had failed to establish a prima facie case of either discrimination or retaliation and thus that the complaint should be dismissed. Petitioner thereafter commenced this CPLR article 78 proceeding, which was transferred to this Court pursuant to Executive Law § 298.

Our review "under the Human Rights Law is extremely narrow and is confined to the consideration of whether the Division's determination is supported by substantial evidence in the record" (*Granelle*, 70 NY2d at 106; *see Mohawk Val. Orthopedics, LLP*, 66 AD3d at 1351). Reasonable conclusions "may not be set aside by the courts although a contrary decision may 'have been reasonable and also sustainable' " (*Matter of Imperial Diner v State Human Rights Appeal Bd.*, 52 NY2d 72, 79 [1980]; *see Matter of Mize v State Div. of Human Rights*, 33 NY2d 53, 56 [1973]).

Here, petitioner is alleging disability discrimination under both the Americans with Disabilities Act (ADA) (42 USC § 12101 *et seq.*) and the New York State Human Rights Law (*see* Executive Law § 296). Under the ADA, petitioner "bears the burden of establishing a prima facie case. In so-called reasonable-accommodation cases, such as this one, [petitioner's] burden 'requires a showing that (1) [petitioner] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his [or her] disability; (3) with reasonable accommodation, [petitioner] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations' " (*Graves v Finch Pruyn & Co., Inc.*, 457 F3d 181, 184 [2006]; *see Parker v Columbia Pictures Indus.*, 204 F3d 326, 332 [2000]). She bears the same burden of proof under Executive Law § 296 (*see Gill v Maul*, 61 AD3d 1159, 1160 [2009]; *Pimentel v Citibank, N.A.*, 29 AD3d 141, 147 n 2 [2006], *lv denied* 7 NY3d 707 [2006]).

We conclude that petitioner established that she was disabled (*see* 42 USC § 12102 [1], [2]), that the BPD had notice of the disability and that the BPD failed to grant her a light-duty assignment or to approve her request for IOD status. We further conclude, however, that petitioner failed to meet her initial burden of establishing that she could perform the essential functions of her job with reasonable accommodation. First, petitioner submitted no evidence at the hearing establishing the

essential functions of her job as a patrol officer, and thus there was no basis for the ALJ to determine "[w]hether [petitioner's] inability to perform certain tasks render[ed] [her] unable to perform the essential functions of police work in the [City, which] generally requires a fact-specific inquiry" (*King v Town of Wallkill*, 302 F Supp 2d 279, 289 [2004]). Second, petitioner failed to present evidence establishing the existence of a light-duty position or that her request for IOD status was in fact a reasonable accommodation.

Petitioner contends that the BPD failed to accommodate her disability by failing to give her a light-duty work assignment following the September 2003 injury and by denying her requests for IOD status following both injuries. "Reassignment of a disabled employee to a vacant light-duty position is well established as a reasonable accommodation under the ADA . . . [but petitioner bore the burden] of establishing the existence of such a position at the time [s]he sought the transfer" (*id.* at 291; *see Jackan v New York State Dept. of Labor*, 205 F3d 562, 567-568 [2000], *cert denied* 531 US 931 [2000]). Indeed, petitioner's evidence at the hearing established that there were no such positions available. "An employer is not . . . obligated to create a new light-duty position for a disabled employee" (*King*, 302 F Supp 2d at 291; *see Matter of Mair-Headley v County of Westchester*, 41 AD3d 600, 602-603 [2007]). With respect to IOD status, we conclude that petitioner failed to establish that such a paid leave was a reasonable accommodation (*see Scott v Memorial Sloan-Kettering Cancer Ctr.*, 190 F Supp 2d 590, 597 [2002]; *Barnett v Revere Smelting & Refining Corp.*, 67 F Supp 2d 378, 392 [1999]; *cf. Graves*, 457 F3d at 185 n 5).

We further conclude that the Division's determination with respect to petitioner's retaliation claim is supported by substantial evidence. "In order to make out the claim, [petitioner was required to] show that (1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 312-313 [2004]; *see Cosgrove v Sears, Roebuck & Co.*, 9 F3d 1033, 1038-1039 [1993]). There is no dispute that petitioner established the first three elements. Petitioner contends, however, that the Division erred in determining that she did not establish the fourth element and that there was no causal connection between the denial of her IOD status applications and her complaint to the EEOC. We reject that contention. There was a

period of several months between the filing of her EEOC complaint and the denial of her IOD status applications, and there is no other evidence establishing a connection between the filing of the complaint and the adverse action with respect to the denial of IOD status. In any event, the denial of IOD status following the September 2003 injury was properly based on an interpretation of the law as it existed at that time. Pursuant to *Matter of Balcerak v County of Nassau* (94 NY2d 253, 259 [1999]), General Municipal Law § 207-c benefits were not available unless an officer was injured "in the performance of special work related to the nature of heightened risks and duties." The Court of Appeals subsequently clarified its holding in *Balcerak* by instead holding that such benefits were available to officers injured in the line of duty (*Matter of Theroux v Reilly*, 1 NY3d 232, 242-244 [2003]). That clarification, however, did not come until months after petitioner's September 2003 applications for IOD status were denied.

With respect to the denial of petitioner's application for IOD status following the November 2003 injury, we note that the denial occurred over six months after petitioner had filed the EEOC complaint. The United States Supreme Court has held that a causal connection cannot be established by the timing of such events unless "the temporal proximity [is] 'very close,' " (*Clark County School Dist. v Breeden*, 532 US 268, 273 [2001], *reh denied* 533 US 912 [2001]), and the Court cited two cases in which a three-month period and a four-month period were insufficient (*id.* at 273-274). Here, the denial of IOD status was made by someone who lacked any knowledge of the EEOC complaint, but the decision was based in large part on Zagara's report. Because Zagara "played a meaningful role" in the decision-making process, we may consider his knowledge of the EEOC complaint in determining whether there was a causal connection (*Bickerstaff v Vassar Coll.*, 196 F3d 435, 450 [1999], *cert denied* 530 US 1242 [2000], *reh denied* 530 US 1289 [2000]; *see Gordon v New York City Bd. of Educ.*, 232 F3d 111, 117 [2000]). While the evidence presented at the hearing *could* have supported a finding of retaliation, our role is limited to determining whether there is substantial evidence to support the Division's determination, and we conclude that there is.

The Division, by adopting the proposed order of the ALJ, determined that petitioner failed to establish a causal connection because "the animus between [petitioner] and Zagara was long standing" and predated the EEOC complaint. Indeed, the ALJ found that "Zagara did not find [petitioner] to be a satisfactory employee and . . . did not trust her." "[M]ere personal-

ity conflicts must not be mistaken for unlawful discrimination, lest the antidiscrimination laws 'become a general civility code' " (*Forrest*, 3 NY3d at 309; *see Gibson v Brown*, 1999 WL 1129052, *12, 1999 US Dist LEXIS 18555; *33-35 [ED NY 1999], *affd* 242 F3d 365 [2000]; *Padob v Entex Info. Serv.*, 960 F Supp 806, 813 [1997]). Here, there is substantial evidence establishing that the opinion of Zagara was based on the long-standing animus between petitioner and Zagara rather than any retaliatory intent. Present—Smith, J.P., Fahey, Carni, Sconiers and Pine, JJ.