# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**406**

**CA 10-02068**

PRESENT: SCUDDER, P.J., SMITH, PERADOTTO, LINDLEY, AND GREEN, JJ.

---

STATE OF NEW YORK EX REL. KEVIN GRUPP AND
ROBERT MOLL, PLAINTIFFS-RESPONDENTS,

                    V                           MEMORANDUM AND ORDER

DHL EXPRESS (USA), INC., DHL WORLDWIDE
EXPRESS, INC., AND DPWN HOLDINGS (USA), INC.
(FORMERLY KNOWN AS DHL HOLDINGS (USA), INC.),
DEFENDANTS-APPELLANTS.

---

ORRICK, HERRINGTON & SUTCLIFFE LLP, NEW YORK CITY (J. PETER COLL, JR.,
OF COUNSEL), FOR DEFENDANTS-APPELLANTS.

HODGSON RUSS LLP, BUFFALO (JOHN L. SINATRA, JR., OF COUNSEL), FOR
PLAINTIFFS-RESPONDENTS.

---

       Appeal from an order of the Supreme Court, Erie County (John M.
Curran, J.), entered May 5, 2010. The order denied the motion of
defendants to dismiss the amended complaint.

       It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law without costs, the motion is granted
and the amended complaint is dismissed.

       Memorandum: Plaintiffs commenced this qui tam action pursuant to
the New York False Claims Act ([FCA] State Finance Law §§ 187 *et
seq*.), seeking to recover, inter alia, treble damages for losses that
the State of New York sustained with respect to a contract in which
defendants agreed to provide air and ground shipping services to the
State. Plaintiffs, two former ground shipping subcontractors of
defendants, alleged that defendants overbilled the State for shipping
by charging a jet fuel surcharge for shipments that were transported
by truck, rather than the lower diesel fuel surcharge. After the
Attorney General declined to intervene, plaintiffs chose to continue
prosecuting the action. Defendants appeal from an order that, inter
alia, denied their pre-answer motion to dismiss the amended complaint.
We agree with defendants that this action is preempted by the Airline
Deregulation Act of 1978 ([ADA] 49 USC § 41713 [b] [1]) and the
Federal Aviation Administration Authorization Act ([FAAAA] 49 USC §
14501 [c] [1]), and we therefore reverse.

       The ADA provides that, with certain exceptions, "a State . . .
may not enact or enforce a law . . . related to a price, route, or
service of an air carrier that may provide air transportation under

[the Economic Regulation] subpart" of Title 49 of the United States Code (49 USC § 41713 [b] [1]). By nearly identical language, the FAAAA preempts state regulation of motor carriers of property (*see* 49 USC § 14501 [c] [1]). Although "we are guided by the 'starting presumption that Congress does not intend to supplant state law' unless its intent to do so is 'clear and manifest' " (*Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105, 113, *cert denied* ___ US ___, 129 S Ct 999, quoting *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US 645, 654-655), it is well settled that a cause of action relates to rates, routes or services within the meaning of the ADA and thus is preempted whenever the underlying state action can be classified as "having a connection with or reference to airline 'rates, routes, or services' " (*Morales v Trans World Airlines, Inc.*, 504 US 374, 384). The same rule applies to motor shipping rates pursuant to the FAAAA. Inasmuch as the causes of action in the amended complaint seek damages based upon defendants' allegedly improper use of certain shipping rates, they unquestionably have a connection to airline and motor freight rates and therefore are preempted.

Contrary to the contention of plaintiffs, the so-called market participant exception to the preemption doctrine does not apply herein. In what is known as the *Boston Harbor* case (*Building & Constr. Trades Council of the Metro. Dist. v Associated Bldrs. & Contrs. of Mass./R.I., Inc.*, 507 US 218, 226-229), the United States Supreme Court concluded that the preemption doctrine will not apply when a state obtains goods or services in a proprietary capacity, acting in the same manner as a private entity seeking to obtain necessary goods and services. "In distinguishing between proprietary action that is immune from preemption and impermissible attempts to regulate through the spending power, the key under *Boston Harbor* is to focus on two questions. First, does the challenged action essentially reflect the entity's own interest in its efficient procurement of needed goods and services, as measured by comparison with the typical behavior of private parties in similar circumstances? Second, does the narrow scope of the challenged action defeat an inference that its primary goal was to encourage a general policy rather than address a specific proprietary problem?" (*Cardinal Towing & Auto Repair, Inc. v City of Bedford, Tex.*, 180 F3d 686, 693). Here, the broad scope of the FCA demonstrates that its primary goal is to regulate the actions of those who engage in business with the State, and thus the statute enforces a general policy.

Furthermore, although "the ADA permits state-law-based court adjudication of routine breach[]of[]contract claims" (*American Airlines, Inc. v Wolens*, 513 US 219, 232), the preemption doctrine applies to "confine[] courts, in breach[]of[]contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement" (*id.* at 233). Here, plaintiffs seek treble damages for defendants' alleged false claims in setting airline and truck shipping rates and thus the action falls squarely within the preemption doctrine. "Simply calling this a contract dispute does not gainsay that the dispute is over the rates charged by an air carrier during a specified time period" (*Strategic*

*Risk Mgt. v Federal Express Corp.*, 253 AD2d 167, 172, *lv denied* 94 NY2d 757).

Defendants' remaining contentions are moot in light of our resolution of the preemption issue.