[970 NE2d 391, 947 NYS2d 368]

STATE OF NEW YORK ex rel. KEVIN GRUPP et al., Appellants, v DHL EXPRESS (USA), INC., et al., Respondents.

Argued March 20, 2012; decided April 26, 2012

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

## POINTS OF COUNSEL

*Hodgson Russ LLP*, Buffalo (*Daniel C. Oliverio* and *John L. Sinatra, Jr.*, of counsel), for appellants. I. New York's False Claims Act is not preempted. (*New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US 645; *Engine Mfrs. Assn. v South Coast Air Quality Mgt. Dist.*, 498 F3d 1031; *Building & Constr. Trades Council v Associated*

*Builders & Contractors of Mass./R.I., Inc.*, 507 US 218; *Matter of Council of City of N.Y. v Bloomberg*, 6 NY3d 380; *Cardinal Towing & Auto Repair, Inc. v City of Bedford, Tex.*, 180 F3d 686; *Healthcare Assn. of N.Y. State, Inc. v Pataki*, 471 F3d 87; *Californians For Safe & Competitive Dump Truck Transp. v Mendonca*, 152 F3d 1184; *People v Pymm*, 76 NY2d 511; *Rowe v New Hampshire Motor Transp. Assn.*, 552 US 364; *Morales v Trans World Airlines, Inc.*, 504 US 374.) II. DHL Express (USA), Inc.'s contract defense fails on this CPLR 3211 (a) (1) motion. (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314; *Jesmer v Retail Magic, Inc.*, 55 AD3d 171; *REA Express, Inc. v Civic Aeronautics Bd.*, 507 F2d 42.) III. DHL Express (USA), Inc.'s 180-day argument fails. (*Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 US 837; *United States v Mead Corp.*, 533 US 218; *Sierra Club v Johnson*, 541 F3d 1257; *In re Apex Express Corp.*, 190 F3d 624; *KVOS, Inc. v Associated Press*, 299 US 269; *People v Bourne*, 139 AD2d 210; *Mastercraft Interiors, Ltd. v ABF Frgt. Sys., Inc.*, 350 F Supp 2d 686; *Mitchell v Donchin*, 286 F3d 447; *Young v United States*, 535 US 43.)

*Dechert LLP* (*Edwin V. Woodsome, Jr.*, of the California bar, admitted pro hac vice, of counsel), and *Dechert LLP*, New York City (*Joseph F. Donley* of counsel), for respondents. I. The Airline Deregulation Act and Federal Aviation Administration Authorization Act preempt the relators' claims. (*Morales v Trans World Airlines, Inc.*, 504 US 374; *Rowe v New Hampshire Motor Transp. Assn.*, 552 US 364; *American Airlines, Inc. v Wolens*, 513 US 219; *Air Transp. Assn. of Am., Inc. v Cuomo*, 520 F3d 218; *United Airlines, Inc. v Mesa Airlines, Inc.*, 219 F3d 605; *Strategic Risk Mgt. v Federal Express Corp.*, 253 AD2d 167; *Lehman v USAIR Group, Inc.*, 930 F Supp 912; *Statland v American Airlines, Inc.*, 998 F2d 539; *Data Mfg., Inc. v United Parcel Serv., Inc.*, 557 F3d 849; *Musson Theat., Inc. v Federal Express Corp.*, 89 F3d 1244.) II. No preemption exception applies to the relators' claims. (*American Airlines, Inc. v Wolens*, 513 US 219; *Mayo v Royal Ins. Co. of Am.*, 242 AD2d 944; *Building & Constr. Trades Council v Associated Builders & Contractors of Mass./R.I., Inc.*, 507 US 218; *Cardinal Towing & Auto Repair, Inc. v City of Bedford, Tex.*, 180 F3d 686; *Vermont Agency of Natural Resources v United States ex rel. Stevens*, 529 US 765; *Texas Industries, Inc. v Radcliff Materials, Inc.*, 451 US 630; *BMW of North America, Inc. v Gore*, 517 US 559; *In re Commonwealth Cos., Inc.*, 913 F2d 518; *Matter of Hogan v Cuomo*, 67 AD3d 1144; *United Airlines, Inc. v Mesa Airlines,*

*Inc.*, 219 F3d 605.) III. Other independent grounds support dismissal. (*United States ex rel. Butler v Hughes Helicopters, Inc.*, 71 F3d 321; *In re Apex Express Corp.*, 190 F3d 624; *United States v Mead Corp.*, 533 US 218; *Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 US 837; *Island Park, LLC v CSX Transp.*, 559 F3d 96; *Ely-Cruikshank Co. v Bank of Montreal*, 81 NY2d 399; *Guilbert v Gardner*, 480 F3d 140.)

## OPINION OF THE COURT

JONES, J.

In this qui tam action, this Court is asked to consider whether plaintiffs' claims on behalf of the State of New York, pursuant to the New York False Claims Act (FCA) (State Finance Law § 187 *et seq.*), are federally preempted by the Airline Deregulation Act of 1978 (ADA) (49 USC § 41713 [b] [1]) and the Federal Aviation Administration Authorization Act (FAAAA) (49 USC § 14501 [c] [1]). We hold they are and that the market participant doctrine is inapplicable.

Pursuant to a contract with the State of New York,[1] defendant DHL Express (USA), Inc. (DHL) agreed to provide various courier services via air and ground transportation, including "Overnight Air Express," "Next Afternoon Service," "Second Day Service," and "Ground Delivery Service." Plaintiffs Kevin Grupp and Robert Moll own a trucking company and served as an independent contractor to DHL, providing ground shipping services to defendant within the state.

Plaintiffs, as relators, commenced an action on behalf of the State pursuant to the FCA, alleging violations of State Finance Law § 189 (1) (a), (b) and (c)[2] and seeking treble damages, penalties and costs.[3] They assert that from 2003 through 2008, DHL engaged in a persistent practice of misrepresentation, claiming that packages were delivered by air, when in fact, they were shipped via ground transportation. By doing so, the complaint alleges, DHL would impose a jet fuel surcharge even though

---

1. In December 2001, the State of New York, through its Office of General Services, awarded Airborne Express—DHL's predecessor in interest—a contract to provide the State with courier services.

2. State Finance Law § 189 (1) (a) and (b) state that a person will be held liable under the FCA if he or she "knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval"; "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."

3. Plaintiffs served their complaint on the State Attorney General, but the Attorney General declined to intervene.

"[a] substantial percentage of DHL Next Day and 2nd Day deliveries paid for by the State did not travel by air at all."[4] It is further alleged that DHL billed the State a diesel fuel surcharge even when independent contractors, such as plaintiffs, "incurred the majority of fuel costs associated with DHL's ground transportation service."

DHL moved to dismiss the complaint, arguing, in relevant part, that plaintiffs' action was preempted by the ADA and FAAAA. Supreme Court denied the motion, concluding that the market participant exception to federal preemption applied. Relying primarily on *Cardinal Towing & Auto Repair, Inc. v City of Bedford, Tex.* (180 F3d 686 [5th Cir 1999]), the court reasoned that the instant action pertained to the State's proprietary, and not regulatory, capacity. It remarked that

> "[t]he overcharging of the State for goods and services provided by private companies is the prime ill that the [FCA] seeks to address—which is, for the State, a specific proprietary problem. But because the State is such a major consumer of goods and services, the [FCA] permits relators such as plaintiffs to bring to its attention and, taking the risk of nonrecovery, prosecute the State's claims against providers of false statements" (28 Misc 3d 973, 984 [Sup Ct, Erie County 2010] [internal quotation marks and citation omitted]).

The Appellate Division unanimously reversed, granting the motion and dismissing the complaint (83 AD3d 1450 [4th Dept 2011]). The court rejected the market participant doctrine, concluding that "the broad scope of the FCA demonstrates that its primary goal is to regulate the actions of those who engage in business with the State, and thus the statute enforces a general policy" (*id.* at 1452).

This Court granted plaintiffs leave to appeal (17 NY3d 705 [2011]), and we now affirm.

Plaintiffs contend that the United States Congress, by encouraging states to pass fraudulent claim statutes such as the FCA, could not have intended for those statutes to be preempted. Further, plaintiffs contend that the FCA is neither regulatory in nature nor related to the "price[s], route[s], or service[s]" of

---

4. Plaintiffs also allege that in 2004, DHL had expanded its network of truck hubs, increasing the efficacy of ground transportation and obviating the need for air transportation of packages.

DHL. In the alternative, they argue that if preemption is found, then the market participant exception applies because the instant claims pertain to the State's proprietary capacity, as a private actor, in procuring courier services from DHL. We find these arguments unavailing.

■ Under the Supremacy Clause of the United States Constitution, federal laws "shall be the supreme Law of the Land" (US Const, art VI, cl 2) and Congress is vested with the authority to supersede state statutory or regulatory law (*see People v First Am. Corp.*, 18 NY3d 173, 179 [2011]). Thus, the primary concern of courts engaged in preemption analysis is "ascertain-[ing] the intent of Congress" (*Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105, 113 [2008], quoting *California Fed. Sav. & Loan Assn. v Guerra*, 479 US 272, 280 [1987]). There is no plainer indication of preemptive intent than the express language of a statutory provision (*see Doomes v Best Tr. Corp.*, 17 NY3d 594, 601 [2011]; *Balbuena v IDR Realty LLC*, 6 NY3d 338, 356 [2006]).

The ADA provides, in relevant part:

> "Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart" (49 USC § 41713 [b] [1]).

The FAAAA has a nearly identical provision that preempts the enforcement of state laws that relate to "any motor private carrier, broker, or freight forwarder with respect to the transportation of property" (*see* 49 USC § 14501 [c] [1]).

The United States Supreme Court has had previous occasion to consider the scope of these provisions, ascribing them "a broad pre-emptive purpose" (*Morales v Trans World Airlines, Inc.*, 504 US 374, 383 [1992]; *see also American Airlines, Inc. v Wolens*, 513 US 219 [1995]; *Rowe v New Hampshire Motor Transp. Assn.*, 552 US 364 [2008]). The *Morales* Court observed that Congress had enacted the ADA with the goal of deregulating the airline industry based on the rationale that "maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as variety [and] quality . . . of air transportation services" (*Morales*, 504 US at 378

[internal quotation marks and citations omitted]). In conjunction with this purpose, the "relating to" language was construed to have expansive import,[5] preempting any form of "[s]tate enforcement actions having a *connection with*, or *reference to*, airline rates, routes, or services" (*id.* at 384 [emphasis added and internal quotation marks omitted]).

In light of the breadth of the ADA and FAAAA's preemptive language, we reject plaintiffs' contentions that their FCA claims only seek to enforce the State's proprietary interests against the fraud perpetrated by DHL's alleged pricing scheme and are based on general laws that do not prescribe the rates, routes and services of airlines and carriers. On these points, *Morales* and *Wolens*, where similar state fraud claims were federally preempted, are particularly instructive.

In *Morales*, the National Association of Attorneys General (NAAG), an organization composed of the attorneys general of all 50 states, adopted extensive guidelines establishing "standards governing the content and format of airline advertising," among other things (*Morales*, 504 US at 379). Pursuant to these guidelines, the attorneys general of seven states issued an advisory memorandum to major airlines, notifying them that the continued failure to disclose surcharges was "a violation of our respective state laws on deceptive advertising and trade practices"[6] and could result in the commencement of "immediate enforcement actions" (*id.* at 379). Although the states' intended goal was "preventing the market distortion caused by false advertising" through the enforcement of state fraud and consumer protection statutes (*id.* at 389 [internal quotation marks omitted]), the claims were federally preempted because the state guidelines "related to" or bore a "reference to" airfares and rates. The Court also rejected the argument that general state fraud laws that do not prescribe rates, routes and services avoid preemption, concluding that such a construction "ignores the sweep" (*id.* at 386) of the preemptive language and "reads the words 'relating to' out of the statute" (*id.* at 385).

---

**5.** The United States Supreme Court looked to comparable "relating to" language in the preemption provision of the Employee Retirement Income Security Act of 1974 (ERISA) (29 USC § 1144 [a]) which was broadly interpreted to preempt any state law that "has a connection with or reference to [an ERISA] plan" (*see Morales*, 504 US at 384, quoting *Shaw v Delta Air Lines, Inc.*, 463 US 85, 97 [1983]).

**6.** Section 2.5 of the guidelines provided that "[a]ny fuel, tax, or other surcharge to a fare must be included in the total advertised price of the fare" (*Morales*, 504 US at 405).

Similarly, in *Wolens*—a case we find hard to distinguish from this appeal—the plaintiffs asserted claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), seeking monetary relief for the fraudulent devaluation of their earned rewards caused by the defendant airline's unilateral modification to its "frequent flyer" program (*see Wolens*, 513 US at 224-225). Although the plaintiffs' breach of contract claims were allowed to proceed, the Court found the Consumer Fraud Act to be federally preempted because it had similar effect as the NAAG guidelines in *Morales*; that is, "it controls the primary conduct of those falling within its governance" and "serves as a means to guide and police the marketing practices of the airlines," thereby infringing on the airline's ability to set its rates, routes or services (*Wolens*, 513 US at 227, 228).

Accordingly, as the lower courts correctly held, plaintiffs' claims are preempted by the ADA and FAAAA as they plainly have a connection with, or reference to, the rates, routes and services of DHL. Although the gravamen of plaintiffs' complaint pertains to fraudulent misrepresentations, like the state fraud actions in *Morales* and *Wolens*, the instant State Finance Law claims are premised on alleged practices that are directly related to the imposition of fuel surcharges for the offered shipment options and thus reference, at a minimum, the rates billed by the courier.

Of course, the broad preemptive effect of the ADA and FAAAA should not be strained to encompass every asserted claim pertaining to the rates, routes or services of an airline or carrier. The Supreme Court observed that there are certain actions that are sufficiently remote or tenuously related to rates, routes, and services as to avoid preemption (*see id.* at 390), identifying routine breach of contract claims as such a peripheral cause of action as they enforce privately bargained-for obligations rather than further policy matters. Therefore, while the breadth of the ADA and FAAAA may preempt states "from imposing their own substantive standards with respect to rates, routes, or services, [it does not preclude] relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated" (*Wolens*, 513 US at 232-233). Plaintiffs thus alternatively argue that their claims should proceed because they seek to hold DHL liable for breaching its self-imposed obligations under its agreement with the State. However, plaintiffs—who were not parties to the underlying agreement between DHL and the State—

cannot recover under a breach of contract action because they lack privity to enforce the benefit of the parties' bargain. Indeed, their claims are premised solely on the FCA, as relators, and the Supreme Court has expressly ruled that causes of action that are "enlarge[d] or enhance[d] based on state laws or policies external to the agreement" are preempted (*id.* at 233).

Having concluded—as the lower courts did—that plaintiffs' claims are within the scope of express statutory preemptions, we turn to the plaintiffs' primary argument that the market participant doctrine exception is applicable here. Generally, the market participant doctrine recognizes the important distinction between the actions of a state in its dual regulatory and proprietary capacities. "[W]hen a state or municipality acts as a participant in the market and does so in a narrow and focused manner consistent with the behavior of other market participants, such action does not constitute regulation subject to preemption" (*Cardinal Towing*, 180 F3d at 691). However, a governmental entity does not escape federal preemption, even when assuming the role of private actor, if it "us[es] its power in the marketplace to implement governmental policies" (*Matter of Council of City of N.Y. v Bloomberg*, 6 NY3d 380, 395 [2006]). Indeed, "a state acts as a regulator, not a proprietor, when it uses its bargaining leverage as a means of attaining policy ends" (*Council of City of N.Y.*, 6 NY3d at 395, citing *Building & Constr. Trades Council v Associated Builders & Contractors of Mass./R.I., Inc.*, 507 US 218 [1993]). Put another way, "courts have found preemption when government entities seek to advance general societal goals rather than narrow proprietary interests through the use of their contracting power" (*Cardinal Towing*, 180 F3d at 692).

Facially, it is evident that the State procured services from DHL in its proprietary capacity, however, plaintiffs' reliance on the FCA, which establishes public policy goals and is thus regulatory in nature, renders the market participant exception inapplicable to this case. State Finance Law § 189 (1) (g) provides, in relevant part, that a finding of liability under the statute may result in "a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of all damages, including consequential damages." Thus, rather than redressing the harm actually suffered, the statute's imposition of civil penalties and treble damages evinces a broader punitive goal of deterring fraudulent conduct against the State. That is, instead of

compensating the State for damages caused by DHL's purported scheme and addressing its narrow proprietary interests, the FCA would punish and consequently deter such future conduct, thereby promoting a general policy (*Vermont Agency of Natural Resources v United States ex rel. Stevens*, 529 US 765, 786 [2000], citing *Texas Industries, Inc. v Radcliff Materials, Inc.*, 451 US 630, 639 [1981] ["The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers"]). In light of the FCA's regulatory effect, the market participant exception is rendered inapposite to this appeal.[7]

Plaintiffs' remaining contentions have been considered and deemed without merit.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting). I respectfully dissent. Assuming that plaintiffs' claims lie within the scope of the statutory preemptions of the Airline Deregulation Act (ADA) and the Federal Aviation Administration Authorization Act (FAAAA) (*see* 49 USC § 41713 [b] [1]; 49 USC § 14501 [c] [1]), I believe that the market participant doctrine applies here. "[W]hen a State acts as a market participant with no interest in setting policy, as opposed to a regulator," it does not violate preemption principles (*Chamber of Commerce of United States v Brown*, 554 US 60, 70 [2008] [internal quotation marks omitted]). I would deny defendants' motion to dismiss.

In my view, Supreme Court correctly perceived that the dispositive questions are whether the action brought by plaintiffs "essentially reflect[s] the [State's] own interest in its efficient procurement of needed goods and services, as measured by comparison with the typical behavior of private parties in similar circumstances" and whether "the narrow scope of the challenged action defeat[s] an inference that its primary goal was to

7. Notably, the First District Court of Appeal of Florida recently dismissed, and the Supreme Court of Florida declined review of *DHL Express (USA), Inc. v State, ex rel. Grupp* (60 So3d 426 [2011], *review denied* 81 So3d 415 [2012]), an identical action commenced by these plaintiffs against DHL under the false claims act of that state (*see* Fla Stat § 68.081 [2]; § 68.082 [2]). In its decision, the Florida court similarly rejected the market participant doctrine, concluding that the state "acts as a regulator in authorizing suits under the False Claims Act which, as noted above, serve to deter future behaviors on the part of the defendants" (60 So3d at 429). Like State Finance Law § 189 (1) (g), the Florida statute also imposes civil fines and treble damages in qui tam actions.

encourage a general policy rather than address a specific proprietary problem" (*State of N.Y. ex rel. Grupp v DHL Express [USA], Inc.*, 28 Misc 3d 973, 983-984 [2010] [emphasis omitted], quoting *Cardinal Towing & Auto Repair, Inc. v City of Bedford, Tex.*, 180 F3d 686, 693 [5th Cir 1999]). I would answer both questions in the affirmative.

The New York False Claims Act, mirroring the federal government's False Claims Act, subjects "any person who . . . knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval" by the State, or "knowingly makes, uses, or causes to be made or used, a false record or statement material to" such a false or fraudulent claim, to civil liability including treble damages (State Finance Law § 189 [1] [a], [b], [g]). Furthermore, the New York False Claims Act allows "relators" to blow the whistle on a government contractor's fraudulent claims by bringing a qui tam civil action on behalf of the State of New York (State Finance Law § 190 [2]). It is the intent of the statute to be applied broadly to almost any situation where state dollars are involved.

Here, the complaint alleges that DHL fraudulently charged the State jet fuel, rather than diesel fuel, surcharges on Next Afternoon and Second Day shipments that it in fact transported by ground, a claim that directly relates to the State's efficient procurement of needed shipping services. The relators' action was specific to one particular package delivery company. The relators sought not to regulate shipping rates, but to address a very narrow instance of alleged fraudulent overcharging of the State. That is, for the State, a "specific proprietary problem," and I see no evidence of any regulatory impulse.

The majority, in its brief discussion of the market participant doctrine, cites *Matter of Council of City of N.Y. v Bloomberg* (6 NY3d 380, 395 [2006]), in which we held that the market participant exception does not apply when the State acts with an interest in setting policy. In *Council of City of N.Y.*, we ruled that New York City law preventing agencies from contracting with providers that did not offer domestic partner benefits to their employees clearly set policy, and was subject to preemption. The present case could not be more different. The State's role with respect to the action is as a buyer of DHL's services on the open market, rather than as a policymaker.

Although the majority accepts, as it must, that "the State procured services from DHL in its proprietary capacity" (majority op at 286), it attempts to avoid the market participant doctrine by

suggesting that plaintiffs' reliance on the False Claims Act renders the exception inapplicable (*id.* at 286). For this conclusion, the majority offers only one reason—that the False Claims Act imposes civil penalties and treble damages to deter fraudulent conduct against the State (*id.*). In my view, this reasoning is insufficient. An action under State Finance Law § 189 (1) is not designed to regulate and set policy, but rather to protect the State's interest in cost efficiency. That the action will have benefits outside itself does not take away from the fact that the law exists to protect state proprietary interests. As the New York State Senate Introducer's Memorandum in Support of the False Claims Act notes, its purpose is to "help to protect taxpayer dollars by deterring the submission of false claims, enhancing the ability to recover amounts defrauded from the state and local governments, and imposing appropriate civil penalties upon those who have engaged in such illegal activities." (Mem in Support of 2006 NY Senate Bill S3895.) In allowing an action to be brought under this statute, the State is not regulating an industry; rather it is taking part in the activity of the market.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and SMITH concur with Judge JONES; Judge PIGOTT dissents in a separate opinion in which Judge CIPARICK concurs.

Order affirmed, with costs.