# City of N.Y. ex rel. Lerman v E-J Elec. Installation Co.

## 2025 NY Slip Op 31664(U)

## May 7, 2025

## Supreme Court, New York County

## Docket Number: Index No. 100303/2013

## Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. JOHN J. KELLEY**      PART       **56M**

                                      *Justice*

-------------------------------------------------------------------------------X

CITY OF NEW YORK ex rel. JOSEPH LERMAN

                 Plaintiff,

         - v -

E-J ELECTRIC INSTALLATION COMPANY,

                 Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 100303/2013 |
| MOTION DATE | 04/25/2025 |
| MOTION SEQ. NO. | 011 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 011) 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 190, 192, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 284, 285, 286, 287, 288, 289, 290, 293

were read on this motion to/for                SUMMARY JUDGMENT        .

        This is an action pursuant to the New York False Claims Act (State Finance Law §§ 186-194; hereinafter NYFCA), pursuant to which the relator, Joseph Lerman, sought qui tam relief pursuant to State Finance Law § 189, on behalf of the City of New York, against the former defendants Siemens AG and Siemens Electrical, LLC (together the Siemens defendants). Lerman had sought such relief in connection with electrical work for which the Siemens defendants invoiced the City's Department of Environmental Protection (DEP) in the course of constructing the Croton Water Filtration Plant (the plant), located on Jerome Avenue in the Bronx. Lerman also seeks to recover pursuant to State Finance Law § 191 against his former employer, the defendant E-J Electric Installation Company (E-J), for its alleged retaliation against him in the terms and conditions of his employment, based on his investigation of, and complaints about, the subject work and invoicing. E-J now moves pursuant to CPLR 3212 for summary judgment dismissing the complaint insofar as asserted against it. The plaintiff opposes the motion. The motion is denied.

In an order dated July 3, 2019, as amended July 24, 2019, the court (Madden, J.) granted the City's motion to dismiss the qui tam cause of action that Lerman had asserted against the Siemens defendants (SEQ 008). In an order dated December 15, 2020, Justice Madden granted that branch of Lerman's first motion seeking leave to renew his opposition to the City's motion to dismiss the qui tam cause of action, but adhered to her initial determination granting the City's motion to dismiss (SEQ 009). In an order dated March 27, 2025, and entered March 28, 2025, this court denied Lerman's second motion for leave to renew his opposition to the City's motion to dismiss (SEQ 010). The facts underlying the qui tam cause of action are set forth in detail in this court's March 27, 2025 decision and order. In short, Lerman had claimed that the Siemens defendants proposed, approved, and performed certain electrical work at the plant that violated the New York City Electrical Code (Admin. Code of City of N.Y. §§ 27-3001-3025; hereinafter NYCEC), that they thus engaged in deceptive and dangerous practices, that they invoiced the DEP for improper work that needed revision, and that they would have to further invoice the DEP for that corrective work.

As relevant to the retaliation cause of action, as of 2010, Lerman was a member of the ADM (Administrative) Division of Local Union No. 3 of the International Brotherhood of Electrical Workers (IBEW), which entitled him to be employed as an administrative electrician by any contractor that signed the relevant collective bargaining agreement with respect to a particular project or projects. In summer 2010, the DEP entered into a contract with the Siemens defendants for work at the plant, for which the cost of all construction by all involved trades exceeded $3.3 billion. The Siemens defendants initially were joint venturers with Schlesinger Electrical Contractors (SEC), but eventually replaced SEC with E-J, first as a consultant, and later as a subcontractor, to assist them with the work. E-J hired Lerman in October 2010 as a Project Manager/Engineer, assigned him to the Croton project, and tasked him with assessing the work that already had been performed by the Siemens/SEC joint venture. His job responsibilities included identifying any areas where the work was deficient or in violation of the

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**                    **Page 2 of 17**
   **Motion No.  010**

2 of 17

NYCEC, making recommendations to E-J and the Siemens defendants' management as to how to correct problem areas, and preparing budgets necessary to correct any deficiencies. As he described it, his "primary role on the project was to review the high voltage installation of the Croton Plant, identify weaknesses or violations, prepare estimated budgets for corrective work, and ultimately make a recommendation to EJ and Siemens' management." Hence, reporting these issues to appropriate persons concededly was a part of Lerman's work responsibilities. In January 2011, Lerner completed his preliminary review of the prior work, and determined that there were defects in junction "pull" boxes that housed 5,000-volt electrical cables. He attended a meeting with individuals from both the Siemens defendants and E-J to disclose what he had determined to be the potential violations of the NYCEC, and had an engineer create a design for his proposed correction. Lerman, however, thereafter learned that the Siemens defendants had not implemented that correction as of the end of April 2011.

On May 3, 2011, Lerman emailed an inquiry to the Electrical Code Revision and Interpretation Committee (ECRIC) of the Advisory Board of the New York City Department of Buildings (DOB), in which he suggested that the NYCEC prohibited two 5,000-volt cables from sharing the same junction box, but that the Siemens defendants nonetheless declined or refused to heed his recommendation that the subject junction boxes be corrected to avoid that condition. ECRIC initially entertained Lerman's concerns in a preliminary advisory opinion dated June 13, 2011, and suggested that, with respect to 5,000-volt cables, Advisory Board approval would be needed for the separation of different service feeders down-current from the fourth fuse or circuit breaker switch. On June 14, 2011, Lerman forwarded ECRIC's response to his immediate supervisor at E-J, Frank Lambraia, writing, in an email, as follows:

> "From the Advisory Board regarding the separation of the 5KV feeders. When we advised them that this should be done the response was that it's not part of the code. So I posed the question to the Board and finally got this response. Hope I can be of help in resolving this design."

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**                    **Page 3 of 17**
**Motion No.  010**

According to Lerman, the very next day, Lambraia told him to take time off of work, and informed him that Siemens did "not want Lerman working on the Croton Plant project any further." E-J, however, claimed that, contrary to Lerman's contention, he contacted Lambraia to talk about retirement at the age of 64, but that Lambraia suggested that Lerman remain with E-J and simply transfer to another program or project.

Lerman claimed that, almost immediately thereafter, he was reassigned to work on a project at the Barclay's Center in Brooklyn, and asserted that this new assignment was "less desirable" and "significantly further away from his home" in Nanuet, New York, which is located in Rockland County. He further claimed that his regular salary was reduced by $39,000 per year, which he could make up only by working overtime on the Barclay's Center project. Contrary to Lerman's allegations, E-J asserted that Lerman voluntarily transferred to the new project, but retained the same title, same pay, and same benefits, while becoming entitled to a larger reimbursement for his transportation expenses. E-J further contended that Lerman never complained about working at on the Barclay's Center project, and that, in any event, Lerman was accustomed to commuting times greater than one hour, inasmuch as he worked on many projects over his career at locations within New York City that were more distant from his Nanuet home than was the Barclay's Center. E-J's accounting manager, Sean Urban, further argued that Lerman's overtime payment argument was misplaced, since Lerman needed to work only 40 hours per week at Barclay's for the same base pay that he would have earned only by working 50 hours per week on the Croton project.

Lerman nonetheless retained his facility pass for the Croton plant after he began his assignment at Barclay's Center, and returned to the plant to inspect the facility for himself. Beginning in August 2011, he contacted the DEP directly, asserting that the purported NYCEC violation remained uncorrected. Lerman's concerns ultimately were rejected by DEP Deputy Commissioner Kathryn Mallon, who was in charge of the construction project for the plant. She advised Lerman that "there were no problems at the plant and that [he] should refrain from

**100303/2013  CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**                                    **Page 4 of 17**
   **Motion No. 010**

4 of 17

contacting her on the issue again." Croton Project Engineer of Record Pavan Pulijaal, P.E., of the engineering and consulting firm AECOM, also informed Lerman that there were no problems with the junction boxes, as did the DEP's Chief of Power and Mechanical Support Division, Maxim Klavansky, P.E.[1] On July 22, 2012, Lerner mailed a letter, entitled "Potential Disaster Alert," to various public interest and "watchdog" groups, including Hudson Riverkeeper, and he allegedly received and maintained correspondence with William Wegner of that group, who shared the information with a DEP contact, David Warren. Lerman asserted that he also personally contacted Warren at the DEP, and reported his findings to him shortly thereafter.

In August 2012, E-J terminated Lerman's employment at the Barclay's Center project. Although E-J contended that the termination was a result of a reduction in workforce, in which 77 of E-J's employees were discharged from employment at the arena, Lerman claimed that no other administrative electrician was terminated at that time, that his performance evaluation was excellent, and that the termination of his employment occurred only two weeks before the opening of the Barclay's Center, when administrative electricians would be required to operate the arena and respond to any problems with the electrical system. Moreover, Lerman claimed that Lambraia never denied that Lerman's investigation into the plant's compliance with the NYCEC was the cause of the termination of his employment. In this respect, according to Lerman, at a separation-from-employment meeting conducted on August 30, 2012, none of E-J's employees answered any of his questions concerning compliance with or violation of the NYCEC. Although Lerman then returned to the IBEW's hiring hall for other potential employment assignments, he resigned from that union on December 1, 2012.

Lerman commenced this action on February 8, 2013, asserting, among other things, that the stated reasons for E-J's June 2011 transfer of his work assignment from the Croton project to the Barclay's Center project, as well as its August 2012 termination of his employment, were

---

[1] ECRIC chair Mathher Abbassi, P.E., who, although not yet appointed to that position as of 2011, submitted an affidavit in this action confirming that there had never been a violation of the NYCEC.

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS                    Page 5 of 17**
**Motion No.  010**

only pretexts for unlawful retaliation, and thus violated State Finance Law § 191. After the qui tam cause of action was dismissed, E-J made the instant motion for summary judgment on September 26, 2024.

It is well settled that the movant on a summary judgment motion "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853 [1985] [citations omitted]). The motion must be supported by evidence in admissible form (*see Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]), as well as the pleadings and other proof such as affidavits, depositions, and written admissions (*see* CPLR 3212). The facts must be viewed in the light most favorable to the non-moving party *(see Flanders v Goodfellow,* _____NY3d_____, 2025 NY Slip Op 02261, *1 [Apr. 17, 2025]; *Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]). In other words, "[i]n determining whether summary judgment is appropriate, the motion court should draw all reasonable inferences in favor of the nonmoving party and should not pass on issues of credibility" (*Garcia v J.C. Duggan, Inc.*, 180 AD2d 579, 580 [1st Dept 1992]; *see Haymon v Pettit*, 9 NY3d 324, 327 n [2007]). Once the movant meets his or her burden, it is incumbent upon the non-moving party to establish the existence of material issues of fact (*see Vega v Restani Constr. Corp.*, 18 NY3d at 503). A movant's failure to make a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers (*see id.; Medina v Fischer Mills Condo Assn.*, 181 AD3d 448, 449 [1st Dept 2020]).

"The drastic remedy of summary judgment, which deprives a party of his [or her] day in court, should not be granted where there is any doubt as to the existence of triable issues or the issue is even 'arguable'" (*De Paris v Women's Natl. Republican Club, Inc.,* 148 AD3d 401, 403-404 [1st Dept 2017]; *see Bronx-Lebanon Hosp. Ctr. v Mount Eden Ctr.*, 161 AD2d 480, 480 [1st Dept 1990]). Thus, a moving defendant does not meet his or her burden of affirmatively establishing entitlement to judgment as a matter of law merely by pointing to gaps in the

**100303/2013 CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**　　　　　　**Page 6 of 17**
**Motion No. 010**

[* 6]

plaintiff's case. He or she must affirmatively demonstrate the merit of his or her defense (*see Koulermos v A.O. Smith Water Prods*., 137 AD3d 575, 576 [1st Dept 2016]; *Katz v United Synagogue of Conservative Judaism*, 135 AD3d 458, 462 [1st Dept 2016]).

State Finance Law § 191(1) provides, in relevant part, that,

> "[a]ny . . . former employee . . . of any private . . . employer who is discharged, demoted . . . or in any other manner discriminated against in the terms and conditions of employment, . . . because of lawful acts done by the employee . . . in furtherance of . . . efforts to stop one or more violations of this article, shall be entitled to all relief necessary to make the employee, contractor or agent whole."

For the purposes of the NYCFA, the term "lawful act" includes, but is not limited to,

> "obtaining or transmitting to the state, a local government, a qui tam plaintiff, or private counsel solely employed to investigate, potentially file, or file a cause of action under this article, documents, data, correspondence, electronic mail, or any other information, even though such act may violate a contract, employment term, or duty owed to the employer or contractor, so long as the possession and transmission of such documents are for the sole purpose of furthering efforts to stop one or more violations of this article"

(State Finance Law § 191[2]). To state a cause of action to recover for retaliation under the NYFCA, a plaintiff must show that "(1) the employee engaged in conduct protected under the [statute]; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct" (*Landfield v Tamares Real Estate Holdings, Inc*., 112 AD3d 487, 487-488 [1st Dept 2013]).

Because the NYFCA generally follows the federal False Claims Act (31 USC §§ 3730-3733), New York courts look toward federal law when interpreting the NYFCA (*see State of New York ex rel. Seiden v Utica First Ins*., 96 AD3d 67, 71 [1st Dept 2012]).

With respect to the first element of a NYFCA retaliation cause of action (engagement in protected activity), to evaluate whether an employee had indeed engaged in a protected activity under federal law, courts have applied a two-prong test, including both an objective and subjective component, which requires that "an FCA plaintiff must show that '(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**   **Page 7 of 17**
**Motion No.  010**

believe, that the employer is committing fraud against the government'" (*State of New York ex rel. Khurana v Spherion Corp*., 511 F Supp 3d 455, 473 [SD NY 2021], quoting *Ortiz v Todres & Co., LLP*, No. 15-CV-1506 [LGS], 2019 US Dist LEXIS 41701, *9-10, 2019 WL 1207856, *4 [SD NY, Mar. 14, 2019], quoting, in turn, *Lawrence v International Bus. Mach. Corp*., No. 12-CV-8433 [DLC], 2017 US Dist LEXIS 120804, *18, 2017 WL 3278917, *6 [SD NY, Aug. 1, 2017]; *see Conte v Kingston NH Operations, LLC*, 585 F Supp 3d 218, 243 [ND NY 2022]). The term "protected activity" is to be broadly interpreted, and requires only a good-faith or objectively reasonable basis to believe that the defendant was engaged in fraud (*see Anonymous v Anonymous*, 165 AD3d 19, 30-31 [1st Dept 2018]; *State of New York v Covanta Hempstead Co*., 83 Misc 3d 655, 668 [Sup Ct, Nassau County 2024]; *Landfield v Tamares Real Estate Holdings, Inc.,* 2002 NY Slip Op 30168[U], *6-7, 2012 NY Misc LEXIS 3612, *6 [Sup Ct, N.Y. County, Jul. 27, 2012], *affd* 112 AD3d 487 [1st Dept 2013]; *United States ex rel. Sasaki v New York Univ. Med. Ctr*., No. 05-CV-6163 [LMM] [HBP], 2012 US Dist LEXIS 8672, *35, 2012 WL 220219, *12 [SD NY, Jan. 25, 2012]).

Crucially, it is irrelevant to the merits of a retaliation cause of action as to whether any underlying qui tam cause of action previously had been dismissed or had been found to be without merit (*see State of New York ex rel. Banerjee v Moody's Corp.,* 54 Misc 3d 1201[A], 2016 NY Slip Op 51771[U], *18, 2016 NY Misc LEXIS 4599, *52 [Sup Ct, N.Y. County, Dec. 8, 2016] ["The allegations supporting an employee's speech and/or conduct need not amount to an actual FCA violation"]; *United States ex rel. Yesudian v Howard Univ.,* 153 F3d 731, 739, [DC Cir 1998] [successful retaliation cause of action does not require "the plaintiff to have developed a winning qui tam action before he is retaliated against"]; *see also United States ex rel. Schweizer v Océ N.V.,* 677 F3d 1228, 1238 [DC Cir 2012]; *cf. Comptroller of City of N.Y. v Bank of N.Y. Mellon Corp.*, 200 AD3d 58, 60 [1st Dept 2021] [where qui tam cause of action under NYFCA is dismissed, but government ultimately collects money from the alleged wrongdoer, the relator is not entitled to a recovery under State Finance Law § 190(6), which authorizes a

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**                    **Page 8 of 17**
**Motion No.  010**

[* 8]

monetary award to a successful relator based on a percentage of the amount that relator recovers on behalf of the government]).

Rather, the NYFCA, as does the federal False Claims Act, requires only that a relator have a "good faith basis or objectively reasonable basis for believing that the defendants were committing fraud" (*Hoyte v American Natl. Red Cross*, 518 F3d 61, 67 [DC Cir 2008]; *see State of New York ex rel. Banerjee v Moody's Corp.,* 54 Misc 3d 1201[A], 2016 NY Slip Op 51771[U], *18, 2016 NY Misc LEXIS 4599, *52; *Krause v Eihab Human Servs.*, 2015 US Dist LEXIS 101820, *16, 2015 WL 4645210, *8 [ED NY, Aug. 4, 2015]; *United States ex rel. Sasaki v New York Univ. Med. Ctr.*, No. 05-CV-6163 [LMM] [HBP], 2012 US Dist LEXIS 8672, *35, 2012 WL 220219, *12 [SD NY, Jan. 25, 2012]).  Indeed, it is sufficient if a relator is "investigating matters that 'reasonably could lead' to a viable [FCA] case" (*United States ex rel. Mooney v Americare, Inc.*, No. 06-CV-1806 [FB] [PK], 2016 US Dist LEXIS 40464, *4-5, 2016 WL 1212775, *2 [ED NY, Mar. 28, 2016], quoting *United States ex rel. Yesudian v Howard Univ.,* 153 F3d at 740).  "Generally, when a potential plaintiff engages in an investigation in which it would be reasonable to conclude that there is a 'distinct possibility' that [he or] she would find evidence of a[n] FCA violation, courts are inclined to find that the first prong of the analysis has been satisfied" (*United States ex rel. Smith v Yale Univ.*, 415 F Supp 2d 58,103 [D Conn 2003]).

> "Notably, Section 3730(h) [of the federal False Claims Act] 'protects an employee's conduct even if the target of an investigation . . . was innocent,' and 'proving a violation of [the FCA] is not an element of a § 3730(h) cause of action' [to recover for retaliation] (*Graham County Soil & Water Conservation Dist. v U.S. ex rel. Wilson*, 545 US 409, 416 & n 1, 125 S Ct 2444, 162 L Ed 2d 390 (2005)"

(*Krause v Eihab Human Servs.*, 2015 US Dist LEXIS 101820, *16-17, 2015 WL 4645210, *8).

Here, the contract between the DEP and the Siemens defendants required all construction to be in accordance with the law, and Lerman raised a triable issue of fact as to whether he had a good faith belief that the installation of 5,000-volt electrical cables in the same junction box violated the NYCEC, and was in accordance neither with best accepted modern

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**
**Motion No.  010**

**Page 9 of 17**

9 of 17

[* 9]

electrical practices nor the applicable contract drawings. Even though some DEP officials were aware of the situation of which Lerman complained, they were not on the DOB Advisory Board that approved the design of the Croton project, and the language in the contract provided that "no inspection and approval by the [DEP] commissioner, engineer, [or] project manager. . . shall relieve the Contractor of its obligation to perform the work in strict accordance with the Contract." Nor was Lerman required to know, as of 2011, when he was investigating possible violations of the NYCEC, that the investigation that he was pursuing ultimately might lead to a qui tam action (*see United States ex rel. Yesudian v. Howard Univ*., 153 F3d at 741).

Contrary to E-J's contention, the mere fact that Lerman primarily may have been concerned with public safety does not defeat his good-faith belief, or his contention that a reasonable employee in the same or similar circumstances might have believed, that the Siemens defendants and, ultimately E-J, committed a fraud against the DEP. In opposition to E-J's prima facie showing that Lerman's complaints did not specifically relate to alleged fraud or overbilling, Lerman raised a triable issue of fact as to whether his complaints to his E-J supervisor, ECRIC, and DEP officials concerned the Siemens defendants' and E-J's attempts to invoice the DEP for work that they knew or should have known was not properly performed, may have been violative of the NYCEC, was not in accordance with the subject contract and plans, and would require correction, thus increasing the cost to the DEP (*cf. United State ex rel. Owens v First Kuwaiti Gen. Trading & Contracting Co*., 612 F3d 724, 729, 734 [4th Cir 2010] [federal False Claims Act does not allow a qui tam relator to shoehorn what is, in essence, a breach of contract action into a claim that is cognizable under the False Claims Act; "there needs to be something more than the usual back-and-forth communication between the government and the contractor over this or that construction defect and this or that corrective measure"]). Nonetheless, inflated or improper billing for improper purposes will support a claim under the NYFCA (*see State of New York ex rel. Grupp v DHL Express (USA), Inc*., 19 NY3d 278 [2012], *affg* 83 AD3d 1450, 1451 [4th Dept 2011] [defendants overbilled the State for

**100303/2013 CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**
**Motion No. 010**

Page 10 of 17

[* 10]

shipping by charging a jet fuel surcharge, rather than the lower diesel fuel surcharge, for shipments that were transported by truck]; *State of New York ex rel. Edelweiss Fund, LLC v JP Morgan Chase & Co*., 189 AD3d 723, 725 [1st Dept 2020] [inflated rates of interest on conduit bonds, where funds for purchase of bonds originated with the State]; *State of New York ex rel. Aryai v Skanska*, 72 Misc 3d 935, 937 [Sup Ct, N.Y. County 2021] [inflated and padded payroll, including no-show jobs]).

Although the court recognizes that an alleged "misrepresentation" in a claim for payment submitted to the government must be "material to the Government's payment decision in order to be actionable under the [FCA]" (*Universal Health Serv., Inc. v United States ex rel. Escobar*, 579 US 176, 181 [2016]), the court rejects E-J's argument that the alleged "misrepresentation" that they complied with the NYCEC or the contract with DEP, and should be paid for the subject electrical work, was not material.

With respect to the second element of a retaliation cause of action under the NYFCA (employer's knowledge that relator was engaged in protected conduct), E-J demonstrated, prima facie, that, despite its knowledge that Lerman had complained about compliance with the underlying contract and the NYCEC, they did not specifically know that Lerman was making complaints to supervisors, ECRIC, and the DEP about potential false claims. In opposition, however, Lerman raised a triable issue of fact as to whether they knew or should have known that his complaints, of necessity, also related to billing and invoicing for allegedly improper work. State Finance Law § 188(1)(a)(i) defines a "claim" as "any request or demand, whether under a contract or otherwise, for money or property that . . . is presented to an officer, employee or agent of the state or a local government." A "false claim" is defined as "any claim which is, either in whole or part, false or fraudulent" (State Finance Law § 188[2]), while an "obligation" means "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment" (State Finance

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**                    **Page 11 of 17**
**Motion No.  010**

11 of 17

Law § 188[4]). A company may be held liable under the NYFCA where, among other things, it "knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" (State Finance Law § 189[1][a], [b]). Although E-J established that it did not necessarily "know" that it was invoicing the DEP for electrical work that was violative of the NYCEC, it certainly knew, immediately after Lerman brought the issue to its attention, that the Siemens defendants and E-J were invoicing the DEP for work that was not in strict compliance with the underlying contract.

The court rejects E-J's contention that, inasmuch as DEP ultimately became aware of the alleged violations of the NYCEC and the contract, no reasonable person could have believed that the E-J was involved in making a fraudulent claim. In essence, it argued that the "government-knowledge defense," appliable to qui tam causes of action, also is applicable to retaliation causes of action. E-J's own knowledge that Lerman was engaged in conduct otherwise protected by the NYFCA is a necessary element of Lerman's retaliation claim, while the cases relied upon by E-J in support of its contention do not involve claims of retaliation, but stand only for the proposition that government knowledge of an alleged fraud or irregularity provides a defense to a qui tam cause of action, since such knowledge effectively negates the fraud or falsity required to establish a qui tam claim. E-J has cited, and research has revealed, no authority for the proposition that the "government-knowledge defense" is applicable to retaliation claims under the NYFCA, as opposed to qui tam claims.

With respect to the third element of a retaliation cause of action (causal connection between protected conduct and adverse employment action), E-J established, prima facie, that it did not subject Lerman to adverse employment consequences in response to his efforts to stop one or more violations of the NYFCA. Specifically, it made a factual showing that any changes to the terms and conditions of Lerman's employment were based on non-proscribed factors, such as transferring him to what it characterized as an equivalent or better assignment

**100303/2013 CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**
**Motion No. 010**

Page 12 of 17

at Barclay's Center, and a reduction in the workforce at Barclay's Center after he had worked there, and that those changes were not "adverse" in any event. In opposition, however, Lerman raised triable issues of fact with respect thereto by adducing facts that tended to demonstrate that his transfer to the Barclay's Center project was effectuated almost immediately after he advised his supervisor of his inquiry and complaint to ECRIC, and by adverting to the negative effects that such a transfer engendered. He also raised triable issues of fact as to whether his August 2012 termination from employment on the Barclay's center project constituted retaliation for complaints he made to the DEP in July 2012.

"Although not squarely addressing the issue, the Second Circuit has implicitly endorsed the application of the *McDonnell Douglas* framework to Section 3730(h) claims" (*Bernstein v Silverman*, 2024 US Dist LEXIS 135771, *89 [ND NY, Jul. 31, 2024], citing *Liburd v Bronx Lebanon Hosp. Ctr.,* 372 Fed Appx 137, 139 [2d Cir 2010]), which posits that a plaintiff who asserts a claim to recover for retaliation bears the initial burden of establishing a prima facie case by showing that he or she is a member of a protected class, he or she was qualified to hold the position, and that he or she suffered adverse employment action under circumstances giving rise to an inference of retaliation. If the plaintiff makes such a showing, the burden shifts to the employer to show a legitimate, nonretaliatory reason for the employment decision. If the employer succeeds in doing so, the burden then shifts back to the plaintiff to prove that the reason proffered by the employer was merely a pretext for retaliation (*see McDonnell Douglas Corp. v Green*, 411 US 792 [1973]; *Hudson v Merrill Lynch & Co., Inc*., 138 AD3d 511, 514 [1st Dept 2016]; *Melman v Montefiore Med. Ctr*., 98 AD3d 107, 113-114 [1st Dept 2012]).

Inasmuch as retaliation causes of action under the NYFCA share much in common with retaliation claims under the New York State Human Rights Law (Executive Law § 290, *et seq*.; hereinafter NYS HRL) and the New York City Human Rights Law (Admin. Code of City of NY, § 8-101, *et seq*.; hereinafter NYC HRL), judicial interpretation of those anti-discrimination statutes is germane to this court's analysis of Lerman's NYFCA retaliation cause of action. "To establish

[* 13]

a prima facie case of retaliation, the plaintiff must show participation in a protected activity known to the employer, an adverse employment action based upon that protected activity, and a causal connection between the protected activity and the adverse employment action" (*Baldwin v Cablevision Sys. Corp.*, 65 AD3d 961, 967 [1st Dept 2009]). To establish retaliation, "a causal connection cannot be established by the timing of [relevant] events unless the temporal proximity is very close" (*Clark County School Dist. v Breeden*, 532 US 268, 273 [2001]; *see Dotson v J.C. Penney Co., Inc.,* 159 AD3d 1512, 1514 [4th Dept 2018] *Matter of Abram v New York State Div. of Human Rights*, 71 AD3d 1471, 1475 [4th Dept 2010]; *Baldwin v Cablevision Sys. Corp.*, 65 AD3d at 967). Here, E-J's transfer of Lerman's employment assignment from the Croton project to the Barclay's Center project occurred within days after he complained to his supervisor at E-J and provided that supervisor with his email correspondence with ECRIC. Although the termination of Lerman's employment at Barclay's Center occurred approximately one year after he began making written complaints to ECRIC and the DEP, it was effectuated less than one month after he made similar complaints to public-interest organizations and further complaints to the DEP. Hence, the timing of E-J's employment decisions, at the very least, presents triable issues of fact as to whether there was a temporal, causal connection between the allegedly protected activity and the allegedly adverse changes in the terms and conditions of Lerman's employment.

Perhaps more importantly, in opposition to E-J's prima facie showing that the changes to the terms and conditions of Lerman's employment were not adverse, Lerman raised triable issues of fact. In the context of discrimination or retaliation under the NYS HRL,

> "adverse employment action must be 'a *materially* adverse change in the terms and conditions of employment' (*Forrest v Jewish Guild for the Blind*, 3 NY3d [295,] 306 [2004]). Such change must be '"more disruptive than a mere inconvenience or an alteration of job responsibilities,"' such as '"a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities"' (*id.*, quoting *Galabya v New York City Bd. of Educ.*, 202 F3d 636, 640 [2d Cir 2000])"

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**                    **Page 14 of 17**
**Motion No.  010**

[* 14]

14 of 17

(*Golston-Green v City of New York*, 184 AD3d 24, 37 [2d Dept 2020] [emphasis added]).  In the context of discrimination or retaliation under the NYC HRL, however, which courts must interpret more liberally than similar provisions under the NYS HRL and federal anti-discrimination statutes (*see* Admin. Code of City of N.Y. § 8-130[b], [c]), any adverse change in the terms and conditions of employment need not rise to the level of "materiality."  Rather,

> "a rule by which liability is determined *simply by the existence of adverse differential treatment* furthers the City Human Rights Law's deterrent purposes. Indeed, in the context of retaliation claims, the City Council expressly provided that '[t]he retaliation or discrimination complained of . . . need not result in . . . a materially adverse change in the terms and conditions of employment' so long as the retaliatory or discriminatory acts complained of are reasonably likely to deter a person from engaging in the protected activity (Administrative Code of City of NY § 8-107 [7]).  When considering this standard under the City Human Rights Law, the Court of Appeals recognized, as adverse employment actions, *a change in the hours of work or geographical assignments,* being shunned or excluded from meetings, and being transferred to a '*less desirable*' job (*Albunio v City of New York*, 16 NY3d [472,] 476 [2011])

(*Golston-Green v City of New York*, 184 AD3d at 38 [emphasis added]).  Section 191(1) of the State Finance Law, by its terms, authorizes a retaliation cause of action not only where an employee is "discharged, demoted, suspended, threatened, [and] harassed," but also where the employee is "in *any other manner* discriminated against in the terms and conditions of employment, or otherwise harmed or penalized by an employer" (emphasis added).  This broad statutory definition tracks the judicial recognition of the types of adverse employment action recognized as actionable under the equally broad provisions of the NYC HRL.  Hence, the caselaw relied upon by E-J, which involve retaliation claims under the NYS HRL, are inapposite. The court thus concludes that both Lerman's termination from employment at the Barclay's Center, as well as his abrupt transfer to the Barclay's Center project, without a contemporaneous explanation having been provided to him by E-J, constituted actionable adverse changes in the terms and conditions of his employment.

Although E-J established, prima facie, that its transfer of Lerman's employment responsibilities from the Croton project to the Barclay's Center project was a lateral transfer that

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**
**Motion No.  010**

**Page 15 of 17**

15 of 17

provided him with similar responsibilities and pay, Lerman raised triable issues of fact as to whether that change actually was both a demotion and an "other manner" of adverse change in the terms and conditions of his employment that fall within the ambit of State Finance Law § 191(1). Specifically, he raised triable factual issues as to whether (a) his gross regular pay was reduced upon his transfer, (b) the Croton project involved an advanced electrical design, while the Barclay's Center project required only repetitive work, with no hands-on installation assignments, thus depriving him of the opportunity to apply the full panoply of his skills, experience, and training, and (c) his commuting time increased by three hours each day.

Moreover, in addition to the suspect timing of his transfer, Lerman also raised triable issues of fact as to whether the transfer was effectuated, either in whole or in part, as a consequence of his initial email inquiry to ECRIC, particularly in light of the fact that he averred that E-J provided him with no contemporaneous explanation for the sudden transfer, let alone a post hoc explanation therefor. Hence, he has raised a triable issue of fact as to whether his transfer was a mere pretext for E-J's retaliation.

In connection with the termination of Lerman's employment from the Barclay's Center assignment on August 30, 2012, E-J has articulated two seemingly conflicting explanations for that event---that Lerman voluntarily retired on August 30, 2012, and that a reduction in workforce shortly before the opening of Barclay's Center to the public necessitated letting him go. To the extent that E-J made a prima facie showing that Lerman's termination from employment was premised upon reasons other than his engagement in statutorily protected conduct, Lerman raised a triable issue of fact as to whether those reasons were pretextual. Specifically, he expressly denied that he retired in August 2012, but instead asserted that he continued to seek out IBEW union jobs up through and including December 2012. Moreover, he noted that, of the 77 employees whose jobs were terminated at Barclay's Center in August 2012, he was the only electrician at the administrative level whose employment was terminated,

100303/2013  CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS
Motion No. 010

Page 16 of 17

[* 16]

16 of 17

and he explained that, after opening to the public, Barclay's needed to employ many such electricians.

E-J's remaining contentions are without merit.

Accordingly, it is,

ORDERED that the defendant's motion for summary judgment dismissing the complaint is denied; and it is further,

ORDERED that that, on the court's own motion, the attorneys for the parties shall appear for an initial pretrial settlement conference before the court, in Room 204 at 71 Thomas Street, New York, New York 10013, on June 5, 2025, at 2:30 p.m., at which time they shall be prepared to discuss resolution of the action and the scheduling of a firm date for the commencement of jury selection.

This constitutes the Decision and Order of the court.

| 5/7/2025 | |
|---|---|
| DATE | JOHN J. KELLEY, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**100303/2013   CITY OF NEW YORK vs. EJ ELECTRIC INSTALLATIONS**                    **Page 17 of 17**
**Motion No.  010**